**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ARINC ENGINEERING SERVICES, LLC | ) | |
| Plaintiff, | ) | |
| - v - | ) | No.: 07-CV-00073 |
| UNITED STATES OF AMERICA | ) | |
| Defendant | ) | |

**PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to the U.S. Court of Federal Claims Rules of Procedure, ARINC Engineering Services, LLC ("ARINC"), by counsel, respectfully moves to supplement the administrative record to include documents described in this motion as well as transcripts of depositions that the plaintiff proposes to take under a limited scope, described in this motion.

This Court's Appendix C, Rule 22 provides an outline of documents that should be included in the Administrative Record of a bid protest case. This Rule requires production of all documents relevant to the procurement, proposal submission, evaluation, and final award decision. "The record must naturally include all materials upon which the agency relied in awarding the contract at issue." *Cubic Applications v. United States*, 37 Fed. Cl. 339, 343 (1997). This Court has also

allowed supplementation of the record where an agency considered evidence that it failed to include in the record or when the agency failed to consider evidence that was relevant to its final decision. *Myers Investigative and Security Services, Inc. v. United States*, 47 Fed. Cl. 288 (2002).

On February 8, 2007, the defendant produced to the plaintiff its proposed administrative record, containing an index and 68 tabbed documents. A review of this record shows that it apparently does not include all documents that the agency considered or should have considered in its source selection decision.

The Administrative Record currently includes Tabs 1-45 and Tabs 49, and 51-54 that were originally included in the Army's Agency Report to the GAO on December 18, 2006. It also includes Tabs 46-48 and Tab 50, which were pleadings from ARINC's first GAO protest, which was dismissed by GAO following the Army's decision to take corrective action to consider ARINC's claim that BAE had an organizational conflict of interest that gave it an unfair competitive advantage. Tabs 55-58 were pleadings from ARINC's second GAO protest, following the Agency's corrective action and decision that there was no organizational conflict of interest in this case. Tabs 59 through 68 are new documents to the Administrative Record, although Tabs 59 and 60 were included as exhibits to ARINC's second GAO protest an its Complaint currently before the Court.

The Government is including Tabs 59 and 60 apparently because they related directly to the contracting officer's consideration of and denial of ARINC's claim that

BAE's prior task orders gave it an unfair competitive advantage over and above the competitive advantage that an incumbent typically has. In particular, these documents relate specifically to the material that the Contracting Officer says she considered during the corrective action period between October 30, 2006 (when she announced her corrective action) and November 9, 2006 (when she determined that no organizational conflict of interest existed). On November 9, 2006, the Contracting Officer completed her written Determination and Finding that no organizational conflict of interest existed. (AR Tab 51). Also on November 9, 2006, the Source Selection Authority prepared an addendum to the Source Selection Decision, considering the Contracting Officer's Determination and Finding document and concurring with the Contracting Officer that no organizational conflict of interest existed. In that document, the Source Selection Official reaffirmed that "the BAE offeror is the best value of the full and open competition and accordingly [I] reaffirm the selection of BAE for award." (Tab 52, pp. 5520-5521).

In order for this administrative record to be complete, the record should include all relevant documents actually considered and those that should have been considered in making this Determination and Finding and, ultimately, the source selection decision. In making her Determination and Finding that no organization conflict of interest existed favoring BAE in this case, the Contracting Officer reported that her corrective action included her effort "***to document*** the analysis of possible OCIs made during the COSMIC solicitation and competition phase related to

possible BAE OCI and to document my reanalysis of possible BAE OCI based on information provided by ARINC." (Tab 51, p. 5514, emphasis added). The Contracting Officer further indicated that her corrective action would include issuing "a new Source Selection Decision incorporating ***the new documented information***." *Id*. Currently, the administrative record contains no such "documentation" of her analysis or her investigation, other than the Determination and Finding document located at Tab 51.

In that Determination and Finding document, the Contracting Officer provided the following description of what she did and what she considered:

> I conducted a thorough investigation into ARINC's allegations that BAE had an OCI due to unequal access to data related to the FOC-TOC which gave BAE an unfair competitive advantage. Using the information provided by ARINC in the protest, I ***reinvestigated and reanalyzed the incumbent work of ARINC and BAE*** related to the FOC-TOC. I gathered ***all of the relevant documents*** and ***discussed the work*** with the relevant Contracting Officers and Government technical monitors and technical experts familiar with ***the work***. I discussed ***the work*** with the Contracting Officer administering the SMDC/ARSTRAT SETAC contract FOC-TOC task order (SETAC Task Order 0105), the government technical experts responsible for the SMDC/ARSTRAT STARS contract task orders for Space Support Element Tool-set (SSET) and FOC-TOC work (STARS Task Orders 05-725, 05-727, 05-728, 05-717) awarded to ARINC and BAE. I reviewed the Task Orders to determine the similarity to the requirements of the SMOTE Task Order. I discussed ***the work done by BAE and ARINC*** with the technical monitors to determine the access to data BAE and ARINC had in performing the SETAC and STARS Task Orders and how that data related to the SMOTE requirements.

(AR Tab 51, pp. 5514-5515, emphasis added).

Based upon the Contracting Officer's statement here, the administrative record should contain all documents relevant to "the incumbent work of ARINC and BAE related to the FOC-TOC," including those documents that Ms. Alkhafi reviewed and those documents that were relevant to the incumbent work that she failed to review. The record should include all documents relevant to the process of the Contracting Officer's "reanalysis" and "reinvestigation" of this incumbent work. It should also include any and all notes, reports, memoranda, or other documentation relating to the Contracting Officer's discussions with "technical monitors and technical experts familiar with ***the [incumbent] work***" as well as her discussions with the technical monitors on "the extent of access to data BAE and or ARINC had in performing the SETAC and STARS Task Orders and how that data related to the SMOTE requirements."

ARINC moves this court for an order requiring additional document production to supplement the record presently before this Court to cover all the documentation relevant to the Contracting Officer's determination and finding located at Tab 51 and the Source Selection Official's addendum to his source section decision located at Tab 52.

Currently the record includes Government-issued incumbent task orders to BAE and ARINC relevant to the FOC-TOC and SSET programs (Tabs 59 through 68). The record should also include any and all written documentation that BAE (or ARINC) produced in response to these Government issued task orders. We believe

that the universe of relevant documents is covered by the following numbered document requests:

1. The actual BAE response (Task Order Plan) to the 2 TORPs (58 and 61) included at Tabs 59 and 60 of the Administrative Record, as well as responses to the task orders at Tabs 61 through 68.

2. All written deliverables provided to the Government by BAE or its team members for the Task Orders at Tabs 59 through 68 that reflect nature and scope of the work done relating to FOC-TOC and/or SSET in response to the task orders.

3. All Trip Reports, After-Action Reports, technical exchange meeting minutes, other meeting minutes, reports or other documents relating to work performed under these task orders, including documentation of the baseline architecture, which would provide detail of the nature and scope of the work done relating to FOC-TOC and/or SSET in response to the task orders.

4. A copy of any and all equipment inventories reflecting equipment sent from Colorado Springs to Huntsville, as referred to in the BAE Matrix annotations, Complaint Exhibit 7, which also would further provide detail of the nature and scope of the work done relating to FOC-TOC and/or SSET in response to the task orders.

The record should also include any documents that Ms. Alkhafi created or that were created by others for her or as a part of her investigations, discussions, and analyses that formed the basis upon which she denied that any organizational conflict of interest existed. These documents should include notes, emails, memos, letters, spreadsheets, and other documentation.

Finally, the record should include any and all documents not otherwise covered by the previous discussion, that relate specifically to Complaint ¶¶ 46-50 and ¶ 60 and Exhibit 7. Complaint Exhibit 7, in particular, is a series of notes from

the BAE website apparently documenting performance by BAE of a FOC-TOC/SSET integration task for the Army Space Missile Command beginning in April 2005, more than a year prior to the release of the COSMIC RFP. This earlier FOC-TOC/SSET integration task included participation by Ms. Karol Cortright and Mr. John Broussard. Ms. Cortright and Mr. Broussard were both Source Selection Evaluation Panel members on the current procurement and also the drafters of the SMOTE sample task order for the Contracting Officer. See Tab 51, ¶¶ 7 and 8, pp. 5515-5516). The following requests should cover the realm of documents described above:

1. All e-mail traffic from or to Karol Cortright, John Broussard, or Kirby Brown relating to BAE's performance of Task Orders 58 or 62 (Tabs 59 and 60) involving or in any way relating to BAE's integration of the SSE/FOC-TOC referred to in Complaint Exhibit 7.

2. A copy of the white paper, in support of the National Fire Control Symposium, that was requested by LTC Schwartz, and written by CPT Belton on the SSET/FOC-TOC Integration.

We further request that the protester's counsel be allowed to take three or four short depositions of the relevant Government personnel involved with the BAE task orders referenced above, including most likely Carol Alkhafi, the contracting officer who held many verbal discussions with personnel familiar with the BAE performances on incumbent contracts, as well as Karol Cortright and John Broussard, the technical monitors of the BAE task orders and the authors of the SMOTE sample task order. We cannot say until we review the relevant

documentation if any or all of these individual depositions will be necessary, but we expect this to be the case. These depositions will be particularly relevant to the extent that there is little or no written documentation of the Contracting Officer's "reinvestigation" and "reanalysis" of the organizational conflict of interest issue. We will agree to limit the deposition questions to information relating to the protester's organizational conflict of interest allegation in the Complaint and to documents in the administrative record relevant thereto.

Respectfully submitted,

/s/

William T. Welch
BARTON, BAKER, McMAHON & TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 (ex. 22) - Telephone
(703) 448-3336 - Facsimile
Attorney of Record
Counsel for ARINC Engineering Services, LLC

Of Counsel:

J. Patrick McMahon
BARTON, BAKER, McMAHON
& TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 - Facsimile

Dated: February 9, 2007